**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

IN RE HEALTH INSURANCE INNOVATIONS
SECURITIES LITIGATION

Case No. 8:17-cv-02186-TPB-SPF

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL
OF SETTLEMENT; (II) APPROVAL OF NOTICE TO THE CLASS; (III) SETTING
DEADLINES FOR FINAL APPROVAL; AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Lead Plaintiff Robert

Rector respectfully files this motion with incorporated Memorandum of Law, seeking an order:

(1) granting preliminary approval of the proposed settlement (the "Settlement"); (2)

preliminarily certifying the proposed class for purpose of the Settlement pursuant to Rule 23(a)

and 23(b)(3); (3) approving the form and manner of notice to the class; and (4) setting a date

and time for the fairness hearing regarding the proposed Settlement and Plan of Allocation.[1]

The proposed Settlement with Defendants Health Insurance Innovations, Inc. (now

known as Benefytt Technologies, Inc.) (hereinafter "HIIQ") and Michael D. Hershberger

(together, "Defendants"), provides a cash payment of two-million eight-hundred-thousand

dollars ($2,800,000.00) (the "Settlement Amount") pursuant to the terms set forth in the

accompanying Stipulation of Settlement (the "Stipulation"). The Settling Parties reached this

agreement after more than two and a half years of protracted litigation, including extensive

---

[1] While mindful of this Court's preference not to receive unsolicited proposed orders, the parties have moved for leave to file proposed orders here consistent with the requirements of Rule 23. *See e.g. City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *15-36 (S.D. Fla. 2016); *In Re Miva*, No. 2:05-cv-00201-FtM-29DNF, ECF 238 (M.D. Fla. May 22, 2014). Examples of such orders are provided in Exhibits A & B to the Stipulation of Settlement (attached as Exhibit 1 to this Motion).

investigation, formal discovery and arm's-length negotiations with the assistance of respected mediator, David Geronemus, Esq. (JAMS). The parties also engaged in two mediations with the Hon. Christopher P. Tuite, who can attest to Plaintiff's vigorous prosecution of this matter on behalf of the settlement class. As demonstrated below, the proposed Settlement is an excellent result for the Class and is fair, reasonable and adequate under the governing standards in this Circuit, and merits preliminary approval.

## I.  HISTORY OF THE LITIGATION

This lawsuit was first filed in this District on September 21, 2017. ECF 1. On February 6, 2018, Robert Rector was appointed Lead Plaintiff in this consolidated matter. ECF 42. On March 23, 2018, Mr. Rector filed the Consolidated Complaint ("CC"). ECF 43. Defendants (together with former individual defendants Gavin T. Southwell and Michael W. Kosloske) filed a motion to dismiss on May 7, 2018. ECF 53. While the motion to dismiss was pending, the parties engaged in court-ordered mediation with the assistance of Judge Tuite on April 24, 2019, and May 22, 2019, but were unable to reach a resolution at that time. *See* ECF 71 & 74.

On June 28, 2019 Judge Elizabeth A. Kovachevich issued her 83-page order granting in part and denying in part Defendants' Motion to Dismiss, including dismissing both former individual defendants. *See* ECF 76; *In re Health Ins. Innovations*, 2019 U.S. Dist. LEXIS 141591 (M.D. Fla. 2019). In that order, the Court found that Defendants made no actionable statements prior to August 4, 2017, consequently limiting the putative class period from the originally-pled ten month period to a time frame of approximately forty days (August 4, 2017 through September 11, 2017). *Cf. Id.* at *109 *with* ECF 43 at ¶ 1. Following that order, this matter was reassigned to this Court. ECF 79.

2

Defendants filed their Answer on August 12, 2019. ECF 81. On September 3, 2019, the parties exchanged initial disclosures and Defendants' new counsel filed an Amended Answer. ECF 85. Defendants filed a Second Amended Answer on October 11, 2019. ECF 90. On January 17, 2020, Plaintiff filed a motion to compel compliance with his First Set of Requests for Production of Documents, which Defendants opposed. ECF 110 & 117. Magistrate Judge Flynn held a hearing on February 27, 2020 in which Defendants clarified before the Court that "all documents that relate to the Florida TPA licensing issue will be produced . . . " Hrg. Tr. at 54:15-18. While Judge Flynn denied Plaintiff's motion, he did so without prejudice. ECF 124.

Plaintiff filed his class certification motion on November 15, 2019. ECF 104 & 105-1/5. Defendants filed their opposition on January 21, 2020. ECF 113 & 113-1/8. On January 23, Lead Plaintiffs sought leave to file a reply brief, which Defendants opposed in part. ECF 114 & 115. On January 24, the Court entered an order that "granted in part" Plaintiff's motion, allowing him to file a ten-page reply. ECF 116. Plaintiff timely filed his reply. ECF 125. On March 12, 2020, Defendants filed motions (i) to strike a small portion of the reply brief and three of its supporting exhibits and (ii) for leave to file a sur-reply to address "a number of crucial points of law and fact" raised in the reply. ECF 127 & 128. Plaintiff opposed both motions. ECF 129 & 131. On March 26, the Court entered an order, striking *sua sponte* Lead Plaintiff's reply in its entirety. ECF 134. Plaintiff filed a motion for reconsideration (ECF 143), which the Court denied (ECF 144).

On March 24, 2020, the parties jointly filed a motion to stay class certification proceedings pending mediation. ECF 132. On April 3, 2020, the Court held a telephonic status

conference, where it granted the joint motion to stay class certification proceedings and ordered the parties to file a status report within 14 days of the mediation. ECF 140. The Parties engaged in a full day mediation on April 30, 2020. After eleven hours of negotiating, the parties reached an agreement in principle to settle the case for $2,800,000 in cash. The recovery for the settlement class represents a nearly 10% recovery for the class of the maximum damages attributable to the alleged fraud as calculated by Plaintiff's expert economist. Had the Court adopted Defendants' arguments at class certification regarding disaggregation, the $2.8 million recovery would represent a much larger percentage.

Once the material terms of settlement had been agreed to by the parties, the parties notified the Court of their settlement on May 11, 2020. ECF 147. That same day, this Court dismissed the Action without prejudice, preserving the parties' rights to move to reopen the Action within 60 days. A joint motion to re-open the case is being filed concurrently.

## II.    REASONS FOR SETTLEMENT

Through in-depth investigation and extensive formal discovery, Plaintiff developed a detailed understanding of the strengths and weaknesses of the factual allegations, claims and the alleged damages suffered by the Class. Plaintiff has also had opportunity to assess the viability of Defendants' arguments *via* their: (i) motion to dismiss; (ii) vigorous opposition to class certification; (iii) document and expert discovery; and (iv) detailed submissions to the mediator. The Stipulation provides a significant all-cash benefit for the Class, eliminating the risk that continued litigation may result in a smaller or no recovery at all.

Defendants have denied and continue to deny each and all of Plaintiff's allegations and claims, but nevertheless determined to fully and finally resolve this Litigation in the manner

and on the terms set forth in the Stipulation. For Defendants, resolution of the Litigation limits further expense and inconvenience with respect to the defense of the case. Defendants have also taken into account the uncertainty and risks inherent in any litigation and have concluded that it is desirable and beneficial to settle this Litigation as set forth in the Stipulation. Plaintiff and his Counsel respectfully submit that the proposed Settlement is within the range of possible approval to warrant this motion for preliminary approval.

III.    **TERMS OF THE SETTLEMENT**

The Settling Parties' agreement resolves all claims in this Litigation as to all Defendants and provides a substantial Settlement Amount to the Class. Defendants will cause the Settlement Amount to be deposited into an interest-bearing escrow account ("Escrow Account") twenty days after this Court grants preliminary approval. A Notice of Proposed Settlement of Class Action ("Notice", Exhibit A-1 to the Stipulation) explains the Settlement's terms, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim", Exhibit A-3 to the Stipulation) pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval; there will be no reversion to Defendants once the Settlement becomes effective.

The Notice informs Settlement Class Members of, *inter alia*, Lead Counsel's application for attorneys' fees and expenses, and the proposed Plan of Allocation for distributing the Net Settlement Fund. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Final Approval Hearing. The Plan of

Allocation provides for distribution of the Settlement Fund (after deduction of Court-approved fees and expenses) to Settlement Class Members with losses on HIIQ securities acquired during the Class Period. The formula to apportion the Net Settlement Fund among Settlement Class Members is based on when they purchased, acquired, and/or sold their shares of common stock and/or options, as developed by Plaintiff's damages consultant, Dr. Zachary Nye. Settlement Class Members' recoveries are based upon their relative losses and Class Members will receive a *pro rata* distribution from the Net Settlement Fund, calculated in the same manner. *See Guevoura Fund Ltd. v. Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *33 (S.D.N.Y. 2019) (finding similar plan of allocation developed by Dr. Nye "fair and reasonable."). Lead Counsel will seek fees not to exceed 33.3% of the Settlement Fund, plus reimbursement of out-of-pocket expenses not to exceed $315,000. 15 U.S.C. §78u-4(a)(6).

## IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Under Rule 23(e), a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues or defenses of a certified class." Fed. R. Civ. P. 23(e). The decision of whether to approve a proposed settlement is within the discretion of the court but is "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012); *see also In re HealthSouth Corp. Sec. Litig*., 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). This is especially true of securities fraud cases. *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("Due to the notable unpredictability of result in complex securities litigation and the distinct possibility of litigation spanning up to a decade

or more, securities fraud class actions readily lend themselves to settlement.").

Review of a settlement in this Circuit is a two-step process. In the first step, "the court conducts a preliminary review to determine whether the proposed settlement is within the range of possible approval, or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Fla. Educ. Ass'n v. State* ("*FEA*"), 2019 U.S. Dist. LEXIS 229456, at \*8-9 (N.D. Fla. 2019). In the second step, "the court conducts a fairness hearing at which all interested parties are afforded an opportunity to be heard" in order "to determine if the proposed settlement is fair, reasonable and adequate to those who are affected." *Id.* at \*9.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at \*14. As discussed below, all of these factors are easily met here and Plaintiff respectfully requests that the Court grant his motion. *See Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at \*6 (S.D. Fla. 2010) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

## A.    The Proposed Settlement is the Result of Good-Faith Negotiations Among Experienced Counsel

"In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson*, 484 F. App'x at 434. "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id*. Lead Counsel and Liaison Counsel have decades of experience prosecuting securities class actions, as numerous courts around the country have recognized. *See* §V(C), *infra; see also* ECF 105-2 & 105-5. Further, Lead Counsel is well informed about the strengths and

weaknesses of the claims against the Defendants. Indeed, the Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses, which, *inter alia*, included: (i) an exhaustive factual investigation by Lead Counsel prior to filing the Complaint, including public records requests to insurance commissioners' offices around the country; (ii) opposing Defendants' motion to dismiss; (iii) intensive negotiations, including three full-day, mediation sessions; and (iv) propounding discovery requests and reviewing responses from Defendants and numerous third-parties, including analysts that covered the stock, regulatory agencies, and HIIQ's regulatory counsel.

The Settlement is the result of extensive, arms' length negotiations conducted by experienced counsel for all parties, with the assistance of the independent mediators Mr. Geronemus and Judge Tuite. The Settling Parties each submitted written statements and exhibits to Mr. Geronemus briefing him on relevant facts and legal issues. A mediation took place by videoconference on April 30, 2020 with Mr. Geronemus, during which the Settling Parties discussed: (i) the alleged actionable statement described in the Complaint; (ii) market efficiency; (iii) loss causation; (iv) the amount of recoverable damages, if any, the methodology used to determine same, and the feasibility of disaggregating potentially confounding factors; and (v) how the Court might resolve Plaintiff's motion for class certification.

Mr. Geronemus' and Judge Tuite's assistance as mediators strongly supports a finding that negotiations were conducted at arm's length and without collusion. *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *see also*

*Dickman v. Banner Life Ins. Co.*, 2019 U.S. Dist. LEXIS 214768, at *4 (D. Md. 2019) (preliminary approval granted, noting the involvement of "highly regarded mediator David Geronemus"); *Jaffe v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 98177, at *30 (S.D.N.Y. 2016) (preliminary approval granted, noting retention of "David Geronemus, an experienced, independent mediator."). Thus, preliminary approval is justified.

### B.    The Proposed Settlement is Fair, Reasonable, And Adequate

When determining whether to approve a class action settlement, courts in the Eleventh generally consider six factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). Although a full analysis of these factors is unnecessary at the preliminary approval stage, a high-level review of them helps determine whether to grant preliminary approval. *Pierre-Val v. Buccaneers, L.P.*, 2015 U.S. Dist. LEXIS 81518, at *3 (M.D. Fla. 2015) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of the written submissions.").

### 1.    Likelihood of Success/Risks of Litigation

The Settlement adequately reflects the value of Plaintiff's case. Counsel have expended substantial amounts of time and money researching the allegations against Defendants and prosecuting this case. While Plaintiff is confident regarding the ultimate outcome, he acknowledges the risks inherent in litigation, particularly so in a securities class action. *See In re Netbank, Inc. Secs. Litig.*, 2011 U.S. Dist. LEXIS 162835, at *10 (N.D. Ga. 2011) ("As has

9

been noted by other courts, the complexity of securities class action litigation is notably difficult and notoriously uncertain."). Here, Defendants aggressively argued, *inter alia*, that Plaintiff will not be able to demonstrate (i) loss causation under the high standard established in *Meyer v. Greene*, 710 F.3d 1189, 1193 (11th Cir. 2013); (ii) scienter; and/or (iii) the materiality or falsity of the allegedly misleading statement that remained at issue following the Court's ruling on the motion to dismiss. *See Thorpe v. Walter Inv. Mgmt. Corp.,* 2016 U.S. Dist. LEXIS 144133, at *8 (S.D. Fla. 2016) ("Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk and uncertainty."). This was especially true after the Court struck *sua sponte* all of Plaintiff's class certification reply filings. ECF 134.

### 2.  The Range of Possible Recovery and the Point in the Ranges at Which Settlement is Reasonable Support Settlement

Although Plaintiffs and Defendants disagree as to the amount of maximum recoverable damages, the $2.8 million Settlement Fund is a substantial recovery regardless of which party's damages metric is used. In determining where in the range of possible recovery a fair and adequate amount would lie, courts recognize that "(1) proof of damages in a securities fraud case is always difficult and requires expert testimony, and (2) the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *15 n.2.

Dr. Nye has calculated the maximum damages attributable to the alleged fraud to be $28.5 million, meaning the settlement is approximately 10% of the case's likely value. Defendants have denied and continue to deny that the Class suffered any damages and argued that damages associated with the alleged fraud cannot be disaggregated from other company-

specific information. ECF 113 at 18-20. At trial, recoverable damages could be significantly less if the Court were to credit these arguments. The range of possible recovery here is wide and uncertain, and therefore supports the Settlement. Considering the present time value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, this Settlement is well within the range of reasonableness. *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."). Here, Plaintiff faces numerous legal and procedural hurdles that, if not met, could result in **zero** recovery for him and the Class. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 U.S. Dist. LEXIS 121093, at *36 (N.D. Ga. 2008) ("[T]he range of possible recovery must be weighed against the risk of no recovery."). Accordingly, the Settlement Amount is not just reasonable but exceptional.

### 3.    Complexity, Expense and Likely Duration of Litigation

The complexity, expense, and likely duration of securities fraud actions like this one weigh heavily in favor of settlement. *See e.g., Coca-Cola Co.*, 2008 U.S. Dist. LEXIS 121093, at *34 ("Securities litigation generally involves complex issues of fact and law and this case is no exception.") *id.* at *33-34 ("The reaction of a jury to [] expert testimony [in securities cases] is highly unpredictable"). Litigation of this case would require addressing highly technical concepts such as market efficiency and price impact, in addition to complex legal issues like loss causation and scienter. Some of these issues were raised in the class certification pleadings, and would be further investigated at the hearing for class certification, at summary judgment, and again at trial, requiring both sides to continue to pay for expenses such as costly

expert testimony. *Thorpe*, 2016 U.S. Dist. LEXIS 144133, *10 (granting final approval and noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class."). This factor thus supports approval.

### 4.    Potential Opposition of the Class to the Settlement

As the settlement (and notice of same) has not yet been approved by the Court and published for the class' consideration, it is premature to evaluate their reaction at this stage. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 U.S. Dist. LEXIS 99840, at *5 (S.D.N.Y. 2008) ("Since no notice has been sent, consideration of this factor is premature.").

### 5.    The Stage of the Proceedings and Discovery Conducted

As noted above, the Settling Parties conducted extensive investigation and discovery on Defendants and third parties. Depositions of Plaintiff and Defendants' financial consultant have occurred. Additionally, Lead Plaintiff had noticed and was preparing to take the 30(b)(6) deposition of the Corporate Defendant at the time the case settled. Plaintiff had filed his motion for class certification, and Defendants had filed their opposition to it. The next step would have a been a lengthy hearing on class certification, which would have likely been followed by a 23(f) petition by the losing party. The stage of this litigation weighs in favor of approving the settlement. *Dukes v. Air Can.*, 2019 U.S. Dist. LEXIS 221914, at *6 (M.D. Fla. 2019) (adopted Sep. 26, 2019, 18-cv-2176, ECF 40, (Kovachevich, J.)) (recommending preliminary approval of litigation that "has been pending for more than a year and the parties have undergone discovery."); *id.* ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). Based on the above, Plaintiff has ample basis to weigh the potential merits and weaknesses of the Class' claims and made well-

informed decisions in the settlement discussions; the positive result for the Class speaks for itself.

## V.     THE CERTIFICATION OF A PROVISIONAL SETTLMENT CLASS IS APPROPRIATE

"A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue." *Holman v. Student Loan Xpress, Inc.,* 2009 U.S. Dist. LEXIS 113491, at *4 (M.D. Fla. 2009) (Merryday, CJ.). Lead Plaintiff respectfully submits that Defendants stipulated to Class certification for settlement purposes only. Stipulation at ¶9.1. Plaintiff requests that the Court certify a Settlement Class using the definition agreed to in the Stipulation:

> "Settlement Class" means all Persons or entities who purchased or otherwise acquired HIIQ Class A Common Stock (trading symbol HIIQ) or exchange-traded Call Options on HIIQ Class A Common Stock, and all persons who sold (wrote) exchange-traded Put Options on HIIQ Class A Common Stock, between August 4, 2017 and September 11, 2017, inclusive. Excluded from the Settlement Class are Defendants, all current and former directors and officers of Health Insurance Innovations, Inc., each of their respective family members, and any affiliates controlled or owned by any of these excluded individuals and/or entities. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice sent to potential Settlement Class Members.

Stipulation at ¶4. Class Certification for settlement purposes is appropriate because the four prerequisites of Fed. R. Civ. P 23(a) (numerosity, commonality, typicality, adequacy of representation) are met. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 613 (1997). Also, common issues of law or fact predominate over individual issues, making the class action a superior vehicle to fairly and efficiently adjudicate the Settlement Class Members' claims. *See*

Fed. R. Civ. P. 23(b)(3).[2]

**A.      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied**

**1.      Numerosity**

Rule 23(a) requires a plaintiff to show "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). Here, the difficulty or inconvenience of joining all members of the class makes class certification appropriate. *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014) ("Securities fraud actions predicated on public misrepresentations typically satisfy Rule 23(a)(1) where the securities were traded on a national public exchange, as the putative class members are likely to be numerous, geographically dispersed and difficult to identify."). Here, HIIQ's stock traded on the NASDAQ exchange at a weekly trading volume of over 2.9 million shares during the class period. ECF 105-3 at ¶24. The class consists of "hundreds if not thousands of persons." CC at ¶143. Accordingly, the class is sufficiently numerous.

**2.      Commonality**

Common questions of law and fact must exist amongst the Class. Fed. R. Civ. P. 23(a)(2). The Eleventh Circuit has noted that the Rule 23(a)(2) commonality requirement is a "low hurdle," which "can even be satisfied by a single common question." *Thorpe*, 2016 U.S. Dist. LEXIS 33637, at *17. As even Defendants concede in their responses to Plaintiff's Requests for Admissions, common questions of law and fact are present because the alleged fraud involves material misrepresentations and omissions made in a quarterly report filed with

---

[2]      The provisional approval process incorporates numerous safeguards against abuse. Class members will have the opportunity to comment upon any aspect of the Settlement at the fairness hearing. Moreover, the Settlement, the requested attorneys' fees, and all requests for reimbursement of costs and expenses are subject to the approval of this Court. In the event that the Settlement is not approved, the parties shall revert to their litigation status as of April 30, 2020, and the provisional certification shall be rescinded. *See* Stipulation ¶8.7.

the SEC on Form 10-Q. *See* ECF 105-4 at 4-7; *see also In re NetBank, Inc*., 259 F.R.D. 656, 664 (N.D. Ga. 2009) ("Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met.").

The proposed Class satisfies Rule 23(a)'s commonality requirement. Lead Plaintiff alleges Defendants made misleading statements to investors in their August 2017 10-Q. Their alleged material misrepresentations and omissions injured each Class member who acquired HIIQ securities during the Class Period. Common questions of law or fact include whether: (i) Defendants violated the Exchange Act; (ii) Defendants omitted and/or misrepresented material facts; (iii) Defendants knew or recklessly disregarded that their statements were false and misleading; (iv) the price of HIIQ securities was artificially inflated during the Class Period; as well as (v) the extent and appropriate measure of damage sustained by Class members. CC at ¶¶51-57. Such "allegations arising from a fraudulent scheme illustrate the kind of common questions of law and fact anticipated by the commonality requirement." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 274 (N.D. Ala. 2009).

### 3.      Typicality

Rule 23(a) also requires that Plaintiffs show their claims or defenses "…are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). "This nexus exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal

theory." *Id.*   Such is the case here. As discussed above, Plaintiff Robert Rector's claims are typical of, if not identical to, the claims of the other class members. His claims (like those of the Class) involve HIIQ publicly traded securities, are based on the same facts and legal theories, and will be proven with the same evidence. *Thorpe*., 2016 U.S. Dist. LEXIS 33637, at *20 (typicality met in securities case where "[t]he alleged fraudulent statements comprise the wrongful acts which will serve as the same factual predicate for Plaintiffs and all members of the class and which will determine whether Defendants are liable under the same securities fraud theories."). Therefore, the typicality requirement is met.

### 4.     Adequacy of Representation

Under Rule 23(a)(4), "class counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Student Loan Xpress, Inc*., 2009 U.S. Dist. LEXIS 113491, at *9 (quoting *Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 726 (11th Cir. 1987)).

Plaintiff satisfies both prongs of the test because his interests align with those of other Class members, having acquired HIIQ stock during the Class Period and sustained alleged damages as a result of the same alleged material misrepresentations and omissions as other Class members. Lead Plaintiff has taken an active role in the litigation on behalf of the absent Class Members by complying with discovery requests, sitting for deposition, and reviewing and approving the Complaint, class action filings and other key documents. *See* Rector Tr., 61:4-5; 136: 3-5; 49:6-18; 50:13-16, 52:6-8 (ECF 113-5).   Further demonstrating his duties to the class, Plaintiff testified in his deposition that he understands that, as a class representative,

he must: (i) practice "due diligence"; (ii) be "the fiduciary of the class," (69:8-15); (iii) "have their best interests at heart" (69:16-18); (iv) "work[] with [his] attorneys on the case" (70:23-71:1); and (v) evaluate settlement options with the class in mind (73:6:-10). This proposed Settlement represents that commitment. Lead Plaintiff's adequacy is underscored by his retention of KSF, which is highly experienced in prosecuting securities class actions, and has vigorously litigated this Action. *See* ECF 105-2; *see also Air Can*., 2019 U.S. Dist. LEXIS 221914, *11 (preliminary approval recommended where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience."); § VI.C., *infra*.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied

Next, at least one of the three conditions imposed by Rule 23(b) must be satisfied. Plaintiff respectfully suggests that Rule 23(b)(3) is satisfied here, because: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.      Common Questions Predominate

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance inquiries are based "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. Plaintiff

submits that no individual issues predominate in this case, especially in the settlement context.[3] Further, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud [claims]." *Id.* at 625; *see also Monroe Cty. Employees' Ret. Sys. v. Southern Co*., 332 F.R.D. 370, 380 (N.D. Ga. 2019) (same).

Common questions predominate here for the same reasons that Rule 23(a)'s commonality element is satisfied. "[S]ecurities fraud claims involve several common issues, including: whether Defendants made a misleading statement, whether that statement was material, whether Defendants made that statement with scienter and whether Defendants made that statement in connection with the purchase or sale of securities." *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *9-10. Thus, "[w]hether common questions of law or fact predominate in such an action often turns on the element of reliance." *Erica P. John Fund, Inc. v. Halliburton Co*., 131 S. Ct. 2179, 2181 (2011). Plaintiff and the Settlement Class are entitled to rely on the fraud-on-the market presumption of reliance. To invoke the presumption, a plaintiff must show that: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 277-78 (2014). As discussed in Plaintiff's Motion for Class Certification, each of these elements is satisfied in this case. *See* ECF 104 & 105-3. After common questions of liability are resolved, all that remains is the clerical computation of alleged damages suffered by each Class Member. Thus, common questions predominate and

---

[3]      In *Amchem*, the Supreme Court also noted that because a settlement class action obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Fed. R. Civ. P. 23(b)(3). 521 U.S. at 620.

certification is appropriate. *Kirkpatrick*, 827 F.2d at 725 (securities fraud complaint that "allege[d] a single conspiracy and fraudulent scheme against a large number of individuals" was "particularly appropriate for class action.").

### 2.     A Class Action is Superior to Numerous Individual Actions

Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by securities law violations. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Four factors guide the superiority determination; they are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate action; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the utility of the class action method is substantial. Damaged members of the Class could number in the thousands—some not so severely they would litigate claims independently. Denying class certification for settlement purposes could potentially unleash hundreds of individual actions, while others would decline to pursue claims because it is not cost-effective. Furthermore, resolution of this Litigation as a Class Action provides benefits for HIIQ which could not otherwise obtain a Class-wide release and, therefore, would have little incentive to enter into the current Settlement. Certification for settlement purposes allows the Settlement to be administered in an organized and efficient manner. Therefore, resolution

of the Litigation as a Class Action is clearly superior to any other available method of resolution. *See Air Can.*, 2019 U.S. Dist. LEXIS 221914, *12-13 ("The members of the Settlement Class suffered the same alleged injury and seek relief under the same legal theory; thus, as a practical matter, requiring multiple actions by each Settlement Class member would be financially burdensome and judicially inefficient."). For the foregoing reasons, this Settlement Class meets the requirements of both Fed. R. Civ. P. 23(a) and 23(b) and the Court should certify the Class for Settlement Purposes.

### C.    KSF Should Be Appointed Class Counsel Under Rule 23(g)

Fed. R. Civ. P. 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." KSF satisfies the requirements of Fed. R. Civ. P. 23(g) and should be appointed as Class Counsel. *See* firm résumé at ECF 105-2. As discussed above, KSF has fairly and adequately represented the Class as Lead Counsel and will continue to do so. *See also Dougherty v. Esperion Therapeutics*, 2020 U.S. Dist. LEXIS 108072, at *14 (E.D. Mich. 2020) (recommending appointment of  KSF as co-class counsel, noting "counsel's diligent prosecution of this case to date"); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *34 (S.D.N.Y. 2020) (appointing KSF class counsel); *In re Eletrobras Sec. Litig.*, No. 15-cv-5754-JGK, ECF 142 (S.D.N.Y. Dec. 12, 2018) (appointing KSF co-lead counsel of the Settlement Class).

### VI.    THE PROPOSED NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" *Manual for Complex Litigation, Fourth* § 21.312 (2004). In order to satisfy the

due process requirements, notice to Class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught*, 668 F.3d at 1239.

A.     **The Mechanics of the Proposed Notice Program**

Plaintiffs propose that notice be given in the forms attached to the Stipulation as Exhibits A-1 and A-2. The proposed form and method of notice to the Settlement Class describes in plain language the terms the operation of the Settlement, the considerations that caused Plaintiffs and Class Counsel to conclude the Settlement is fair and adequate, the maximum counsel fees and class representative compensation that may be sought, the procedure for objecting to the Settlement, and the date and place of the fairness hearing.

The Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), anticipates making an initial mailing to the Settlement Class Members whose names appear in the depository's transfer agent records and to brokers, banks, and other financial institutions that Epiq believes may hold HIIQ securities in street name for Settlement Class Members. Plaintiffs also propose publishing a summary notice, as attached to the Stipulation as Exhibit A-2 ("Summary Notice"), offering an abbreviated yet informative description of the Litigation and the proposed Settlement, and explaining how to obtain the more detailed Notice and Proof of Claim forms. The Notice and Proof of Claim forms will also be posted on a website hosted

by Epiq dedicated to the settlement administration of this litigation. The Summary Notice will be published once in *Investor's Business Weekly* and once online over the *PR Newswire*.[4] Courts have consistently approved settlements that published notice using these publications.[5]

**B.     The Scope of the Notice Program Is Adequate**

The proposed Notice would fairly inform Settlement Class Members of the Settlement and their options with respect thereto, fully satisfying due process requirements. Rather than apply rigid rules when measuring the adequacy of a class action settlement notice under either the Due Process Clause or the Federal Rules, the Court should consider the notice program's reasonableness. *Faught,* 668 F.3d at 1239. Indeed, courts in the Eleventh Circuit have found similar notice programs adequate. *In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) (per curiam) (individual notice to all reasonably locatable class members, publication in newspapers); *In re Rayonier Sec. Litig.*, 2017 U.S. Dist. LEXIS 167510, at *4 (M.D. Fla. 2017) (individual notice to all reasonably locatable class members, publication in *Investor's Business Daily* and over *PR Newswire*).

**C.     The Proposed Notice Satisfies Due Process, the PSLRA and Rule 23**

Notice to Settlement Class Members "need only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *12 (S.D. Fla. 2015). Specifically, with respect to cases filed under the

---

[4]      *Investor's Business Weekly* (f.k.a *Investor's Business Daily*) and *PR Newswire* are both widely circulated national business publications, as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i).

[5]      *See Lane v. Page*, 250 F.R.D. 634, 646 (D.N.M. 2007) (publication in *Investor's Business Daily* sufficient); *Thomas v. NCO Fin. Sys.*, 2004 U.S. Dist. LEXIS 5405, at *14 (E.D. Pa. 2004) (publication notice using *PR Newswire* was "calculated to have a ubiquitous reach.").

22

PSLRA, a notice must state:

> (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (ii) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable by plaintiffs if they prevailed at trial, a statement from each party concerning the issues on which the parties disagree"; (iii) "[i]f attorney's fees or costs will be sought from the fund, a statement of who intends to apply for same and the amount that will be sought, including the amount of fees and costs on an average per share basis, as well as a brief explanation supporting the fees and costs sought"; (iv) "[c]ontact information for one or more of counsel for the plaintiffs who would be available to answer questions from class members"; (v) "[a] brief explanation as to the reason for settlement"; and (vi) "[o]ther information as required by the Court."

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,* 2015 U.S. Dist. LEXIS 73276, at *24-25 (E.D.N.Y. 2015) (citing 15 U.S.C. §78u-4(a)(7(A)-(F)). The proposed Notice complies with the PSLRA's requirements, straightforwardly advising Settlement Class Members of their right to exclude themselves from or object to any aspect of the Settlement and should be approved. *See* Notice, Exhibit A-1 to the Stipulation.

## VII.   PROPOSED TIMELINE OF EVENTS

In conjunction with the Preliminarily Approval Order, Plaintiff respectfully requests the Court set deadlines for the following events, and propose the following schedule:

| EVENT: | SCHEDULED DATE: |
|---|---|
| Notice and the Proof of Claim form mailed to the Class (the "Notice Date"). | 20 calendar days after entry of Preliminary Approval Order. |
| Summary Notice published in the national edition of *Investor's Business Daily* and once over the national newswire service *PR Newswire*. | 10 calendar days from Notice Date. |
| Lead Counsel shall serve on Defendants' Counsel and the Court proof by affidavit or declaration of mailing and publication. | 7 calendar days prior to Final Approval Hearing. |

| **EVENT:** | **SCHEDULED DATE:** |
|---|---|
| Deadline for Defendants to serve CAFA Notice on State and Federal officials as required by 28 U.S.C. Section 1715(b). | Not later than 10 calendar days after submission of the Stipulation to the Court. |
| Deadline for filing Proof of Claim forms. | 120 calendar days after the Notice Date. |
| Deadline for filing papers in support of the Settlement, Plan of Allocation of settlement proceeds, Lead Counsels' request for an award of attorneys' fees and expenses, and Plaintiffs' award of time and expenses;<br><br>AND<br><br>Deadline for Defendants to file proof by affidavit or declaration showing timely compliance with CAFA Notice. | 35 calendar days prior to Final Approval Hearing. |
| Deadline for objecting to Settlement, Plan of Allocation of settlement proceeds or attorneys' fees and expenses; and to file a Request for Exclusion from the class | 21 calendar days prior to Final Approval Hearing. |
| Deadline for filing reply papers supporting Settlement, Plan of Allocation of settlement proceeds, and request for award of attorneys' fees and expenses. | 7 calendar days prior to Final Approval Hearing. |
| Final Approval Hearing | At least 90 calendar days after entry of Preliminary Approval Order and service of CAFA notices. |

## VIII.  CONCLUSION

Plaintiff therefore respectfully requests that the Court issue an order grating the relief prayed for herein.

## LOCAL RULE 3.01 CERTIFICATION

Defendants do not oppose this motion.

Dated: June 22, 2020.                         Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By:  /s/ Ramzi Abadou
Ramzi Abadou (admitted *pro hac vice*)
(California Bar #222567)
ramzi.abadou@ksfcounsel.com
912 Cole Street, # 251
San Francisco, CA 94117
Telephone:  504-455-1400
Facsimile:  504-455-1498

**KAHN SWICK & FOTI, LLC**

Alexander L. Burns (admitted *pro hac vice*)
(Louisiana Bar #31076)
alexander.burns@ksfcounsel.com
Alayne K. Gobeille (admitted *pro hac vice*)
(Louisiana Bar #33856)
alayne.gobeille@ksfcounsel.com
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone:  504-455-1400
Facsimile:  504-455-1498
*Counsel for Robert Rector and*
*Lead Counsel for the Class*

**GEORGE GESTEN MCDONALD, PLLC**

David J. George
Florida Bar No.: 898570
dgeorge@4-Justice.com
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33467
Telephone: (561) 232-6000
*Liaison Counsel for the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Monday, June 22, 2020 on all counsel of record by using the CM/ECF system.

/s/ Ramzi Abadou
Attorney