# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| IN RE HEALTH INSURANCE INNOVATIONS SECURITIES LITIGATION | Case No. 8:17-cv-02186-TPB-SPF |

### LEAD PLAINTIFF'S UNOPPOSED MOTION FOR: (1) FINAL APPROVAL OF SETTLEMENT; AND (2) PLAN OF ALLOCATION; (3) MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Court-appointed Lead Plaintiff Robert Rector by and through his counsel Kahn Swick & Foti, LLC ("Lead Counsel" or "KSF") respectfully files this motion with incorporated Memorandum of Law, seeking an order: (1) granting final approval of the proposed settlement (the "Settlement") of the above-captioned securities class action (the "Action"); (2) certifying the proposed Class for settlement purposes pursuant to Rule 23(a) and 23(b)(3); and (3) granting final approval of the proposed plan for allocating the settlement proceeds to the Class (the "Plan of Allocation" or the "Plan").[1,]

The class, as preliminarily certified by the Court for purposes of settlement

---

[1] On November 19, 2020, the Hon. District Judge Thomas P. Barber adopted the Hon. Magistrate Judge Sean P. Flynn's Report and Recommendation recommending preliminary approval for certification of the proposed class for settlement purposes (ECF 161, hereinafter "R&R"). ECF 164 ¶¶ 1, 4, 6.

is comprised of:

> [A]ll Persons or entities who purchased or otherwise acquired HIIQ Class A Common Stock (trading symbol HIIQ) or exchange-traded Call Options on HIIQ Class A Common Stock, an[d] all persons who sold (wrote) exchange-traded Put Options on HIIQ Class A Common Stock, between August 4, 2017 and September 11, 2017, inclusive. Excluded from the Settlement Class are Defendants, all current and former directors and officers of Health Insurance Innovations, Inc., each of their respective family members, and any affiliates controlled or owned by any of these excluded individuals and/or entities. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice sent to potential Settlement Class Members.

ECF 164 ¶4.

## INTRODUCTION

The proposed Settlement with Defendants Health Insurance Innovations, Inc. (now known as Benefytt Technologies, Inc.) (hereinafter "HIIQ") and Michael D. Hershberger (together, "Defendants"), provides a cash payment of two-million eight-hundred-thousand dollars ($2,800,000.00) (the "Settlement Amount") in exchange for the dismissal of all claims brought in the Action and a full release of claims against Defendants and the other Released Parties.[2]

The Settlement was reached after years of litigation and is the fruit of well-informed and extensive arm's-length settlement negotiations between skilled and knowledgeable counsel, facilitated by an experienced mediator – David Geronemus, Esq. (JAMS). *See* Declaration of Ramzi Abadou in Support of (1) Lead Plaintiff's Unopposed Motion for Final Approval of Settlement and Approval of

---

[2]   On November 30, 2020, the Settlement Amount was paid into an interest-bearing escrow account on behalf of the Class. Abadou Decl. at ¶ 75.

2

Plan of Allocation; (2) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses; and (3) Lead Plaintiff's Request for Reimbursement of Reasonable Costs and Expenses at ¶¶ 13-63 (hereinafter, "Abadou Decl."); Lead Plaintiff Robert Rector's Declaration in Support of Application for Reimbursement and Final Approval of Settlement at ¶ 11, Abadou Decl. at Ex. VIII ("I strongly endorse the settlement, particularly given the risks of continuing to prosecute the claims in the Action and the extraordinary result achieved in this case.") (hereinafter, "Rector Decl.").

As discussed more fully below, and in the accompanying Abadou Declaration, Lead Plaintiff and Counsel performed a substantial investigation into the Class' claims, engaged in extensive motion practice and participated in formal mediation. *See* R&R at 15 ("Lead Plaintiff and Lead Counsel have vigorously represented the Class."); *see also* Abadou Decl. at ¶¶ 13-63. The parties also engaged in two prior mediations with the Hon. Magistrate Judge Christopher Tuite. Defendants asserted aggressive defenses and, had the Settlement not been reached, the Class would have faced considerable hurdles in proving its case, particularly with respect to overcoming Defendants' defenses to loss causation under *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013) and establishing the Class' full damages at trial. *Id.* at ¶¶ 86-94.

The reaction of the Class thus far also supports the Settlement. Pursuant to the Court's Preliminary Approval Order, over 8,200 copies of the Notice have been

3

mailed to potential members of the Class and their nominees.[3] The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) Lead Plaintiff's estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement, the Plan of Allocation, Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses, and/or Lead Plaintiff's request for reimbursement for his time incurred in his role as Lead Plaintiff and representative of the Class.[4]

As of this filing, not a single objection to any aspect of the Settlement has

---

[3] *See* Abadou Decl. at Ex. I: Declaration of Joseph V. Martino Regarding Notice Dissemination and Publication (the "Martino Decl."), at ¶ 7. The Martino Decl. is submitted on behalf of the Court-authorized Claims Administrator for the Settlement, Epiq. In addition, the Court-approved Summary Notice was published in *Investor's Business Daily* and over the *PR Newswire* on December 14, 2020. *Id.* at ¶ 11. Information regarding the Settlement, including downloadable copies of relevant documents (including the Notice, Proof of Claim, Stipulation of Settlement, and others) was also posted on an Internet website established for the Settlement (www.hiiqsecuritieslitigation.com), and Epiq established and continues to maintain a toll-free telephone number to accommodate potential Settlement Class Member inquiries. *Id.* at ¶¶ 12-18. *See In re Rayonier Sec. Litig.*, 2017 U.S. Dist. LEXIS 167510, at *4-5 (M.D. Fla. 2017) (finding that similar notice program "met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.").

[4] As set forth in the Notice, the deadline for submitting a request for exclusion from the Class or filing an objection to the Settlement, or any aspect thereof, is February 2, 2021. If any requests for exclusion or objections by class members are received after the date of this submission, Lead Counsel will address them in a separate submission to be filed with the Court on or before February 16, 2021.

been received. *See* Abadou Decl. at ¶ 79; Martino Decl. at ¶ 21. Similarly, no requests for exclusion have been received. Abadou Decl. at ¶ 79; *see also* Martino Decl. at ¶ 19; *Amason v. Pantry*, Inc., 2014 U.S. Dist. LEXIS 90537, at *36 (N.D. Ala. 2014) ("In response to the Notice program approved by the court, no class member objected to the settlement, no class member opted out of the settlement, and no federal or state official objected to the settlement. These facts weigh heavily in favor of the fairness, reasonableness, and adequacy of the Settlement.");[5] *see also Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.").

Moreover, Lead Plaintiff, who "dedicated a substantial amount of time monitoring the progress of the litigation and the efforts of Lead Counsel on behalf of the Class . . . reviewed the drafts of all significant filings made in this Action . . . and provided my feedback on those drafts prior to filing with the Court," fully supports the Settlement. *See* Rector Decl. at ¶¶ 4-5; *In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901, at *54 (C.D. Cal. 2012) (class representative "reviewed important pleadings in the case and 'carefully reviewed the proposed settlement with us before approving it on behalf of the putative Class,'" which weighed "in favor of" final approval).

In light of Lead Plaintiff's and Lead Counsel's informed assessment of: (i) the facts specific to this Action; (ii) the strengths and weaknesses of the Class'

---

[5] All internal quotations and citations omitted and emphasis added, unless otherwise noted.

5

claims, and the defenses thereto, based on their extensive litigation and settlement efforts over the pendency of this Action; (iii) the absence of opposition to the Settlement to date; (iv) the considerable risks and delays associated with continued litigation; and (v) Lead Counsel's considerable experience in similar class actions, Lead Plaintiff and Lead Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, certify the Class for purposes of settlement, and deem the Plan of Allocation a fair and reasonable method for distributing the Net Settlement Fund to the Class.

## I.     FACTUAL BACKGROUND AND HISTORY OF THE ACTION

At all times relevant to this Action, HIIQ was a business that developed and administered health insurance products (*i.e.*, short-term medical plans). A week after the Company filed its Third-Party Administrator ("TPA") application in July 2016, the Florida's Office of Insurance Regulation ("FLOIR" or "FOIR") rejected the application for allegedly being incomplete. On June 1, 2017, the FLOIR notified the Company that its application was denied. On August 4, 2017, the Company disclosed that FLOIR had denied the TPA Application. *See In re Health Ins. Innovations Sec. Litig.*, 2019 U.S. Dist. LEXIS 141591, at *52-57 (M.D. Fla. 2019). The Class Period ends on September 11, 2017, in response to a *Seeking Alpha* report about the FLOIR denial. *See id.* at *105.

The first lawsuit was filed in this District on September 21, 2017. ECF 1. On February 6, 2018, Robert Rector was appointed Lead Plaintiff. ECF 42. Defendants

6

(together with former individual defendants Gavin T. Southwell and Michael W. Kosloske) filed a motion to dismiss Plaintiff's Consolidate Complaint (ECF 43) on May 7, 2018. ECF 53. While the motion to dismiss was pending, the parties engaged in two court-ordered mediation with the assistance of the Hon. Magistrate Judge Tuite on April 24, 2019, and May 22, 2019. *See* ECF 71 & 74.

On June 28, 2019, the Hon. District Judge Elizabeth A. Kovachevich issued an 83-page Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss. *See* ECF 76; *see also Health Ins. Innovations*, 2019 U.S. Dist. LEXIS 141591. That Order significantly narrowed both the scope of the surviving claim (leaving only one remaining alleged misstatement) and the length of the putative Class Period (reduced to just five weeks). Following that Order, this matter was reassigned to this Court. ECF 79. Defendants filed their operative Answer on October 11, 2019. ECF 90.

Plaintiff filed his class certification motion on November 15, 2019. ECF 104 & 105-1/5. Defendants filed their opposition on January 21, 2020. ECF 113-1/8. On March 24, 2020, the parties jointly filed a motion to stay class certification proceedings pending mediation. ECF 132. The Parties engaged in a full day mediation on April 30, 2020. After eleven hours of negotiating, the parties reached an agreement in principle to settle the case for $2,800,000 in cash. Once the material terms of settlement had been agreed to by the parties, they notified the Court of their settlement on May 11, 2020. ECF 147. On June 22, 2020, Lead Plaintiff filed his unopposed motion for preliminary approval of the Settlement.

ECF 150. The matter was referred to the Hon. Magistrate Judge Sean P. Flynn, who issued his R&R recommending approval of Plaintiff's motion on October 21, 2020. On November 19, 2020, the Hon. District Judge Thomas P. Barber adopted the R&R, crediting the Hon. Magistrate Judge Flynn's "detailed and well-reasoned factual findings and legal conclusions." ECF 164 at 3.

## II. THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL UNDER RULE 23

### A. The Law Favors and Encourages Settlements

Rule 23(e) requires that class action settlements be approved by the Court. *See generally Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237 (S.D. Fla. 2016). In the Eleventh Circuit, a court's judgment "is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). Moreover, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009); *see also In re Checking Account*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). This is especially true of securities fraud cases. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("Due to the notable unpredictability of result in complex securities litigation and the distinct possibility of litigation spanning up to a decade or more, securities fraud class actions readily lend themselves to settlement.").

"In order to approve a settlement, a district court must find that the

8

settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015). The authority to grant approval of a proposed settlement lies within the sound discretion of the Court. *See Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, 2020 U.S. Dist. LEXIS 89175, at *9 (M.D. Fla. 2020). But in evaluating the fairness of a settlement, a court "must not try the case on the merits." *Pub. Storage*, 301 F. Supp. 3d at 1247; *see also Carroll v. Macy's, Inc.*, 2020 U.S. Dist. LEXIS 99033, at *15 (N.D. Ala. 2020) ("The court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation but to evaluate the proposed settlement in its totality."). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Nelson*, 484 F. App'x at 434. Courts hold that a strong initial presumption of fairness attaches to a proposed settlement if it is "the product of hard-fought, arm's-length negotiations by capable and experienced counsel." *Chis v. Peerless Indem. Ins. Co.*, 2016 U.S. Dist. LEXIS 202374, at *7 (M.D. Ga. 2016).

Here, the Settlement was reached by experienced counsel only after: (i) more than two and half years of contentious litigation; (ii) significant investigation; and (iii) substantial settlement negotiations, including three mediation sessions presided over by experienced neutrals. R&R at 16 ("Rule 23(e)(2)(B) is also satisfied because the Settlement was negotiated at arm's length by informed counsel acting in the best interests of their respective clients during the third mediation, which lasted eleven hours."); Abadou Decl. at ¶¶ 13-63; *see Pub.*

9

*Storage*, 301 F. Supp. 3d at 1247 ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Lead Counsel and Lead Plaintiff were fully informed of the merits of the Action when the Settlement was reached, and the Settlement is entitled to this presumption of fairness.

### B. The Proposed Settlement is Fair, Reasonable and Adequate

When determining whether to approve a class action settlement, courts in the Eleventh Circuit generally consider six factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). The Settlement more than satisfies each of the foregoing factors. Accordingly, it is the considered judgment of Lead Plaintiff and Counsel that the Settlement represents a fair, reasonable, and adequate resolution of the Action and warrants this Court's final approval.

#### 1. Likelihood of Success/Risks of Litigation

The Settlement adequately reflects the value of Plaintiff's case. Counsel have expended substantial amounts of time and money researching the allegations against Defendants and prosecuting this case. As the Hon. Magistrate Judge Flynn recognized in his R&R, "despite Lead Plaintiff's confidence regarding the ultimate outcome, there is an inherent risk in any litigation but particularly securities class

action litigation." R&R at 17; *see also Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. 2003) ("[T]he risks associated with proceeding to trial in this complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the Settlement.").

Defendants' arguments that Plaintiff would not be able to demonstrate, *inter alia*, (i) loss causation under *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013); (ii) scienter; and/or (iii) the materiality or falsity of the allegedly misleading statement that remained at issue following the Court's ruling on the motion to dismiss similarly favor approval of the Settlement.

### 2. The Range of Possible Recovery and the Point in the Ranges at Which Settlement is Reasonable Support Settlement

In opposing class certification, Defendants argued that Lead Plaintiff was neither adequate nor typical, and that the expert analysis Lead Plaintiff offered in support of market efficiency was incompatible with Lead Plaintiff's theory of the case. *See* ECF 113 at 7-18. Additionally, in a preview of arguments Defendants would likely have raised at summary judgment and trial, Defendants argued that Lead Plaintiff's expert analysis could not establish loss causation or damages because it purportedly did not and could not disentangle the impact of the alleged fraud from other information. *See* ECF 113 at 18-20. Regardless of Lead Counsel's confidence, Defendants' success on any of their arguments in opposing class certification – or anticipated arguments at the summary judgment stage or trial of

11

the merits – would have resulted in *zero* recovery for the Class.

Given that Defendants believe that there were no recoverable damages in this case, the $2.8 million Settlement Fund is a substantial recovery, representing approximately 10% of Lead Plaintiff's estimate of recoverable damages. *See* Abadou Decl. at ¶ 83. In determining where in the range of possible recovery a fair and adequate amount would lie, courts recognize that "(1) proof of damages in a securities fraud case is always difficult and requires expert testimony, and (2) the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *15 n.2 (S.D. Fla. 2016). "Because the range of possible of recovery is zero should Defendants prevail to $28.5 million if weight is given to Lead Plaintiff's expert, the Settlement Amount is within such a range." R&R at 18; *see also Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 U.S. Dist. LEXIS 121093, at *36 (N.D. Ga. 2008) ("[T]he range of possible recovery must be weighed against the risk of no recovery.").[6]

Accordingly, the Settlement Amount is more than reasonable.

### 3.     Complexity, Expense and Likely Duration of Litigation

As recognized in the Hon. Magistrate Judge Flynn's R&R, "the complexity, expense, and duration of [this] litigation . . . weigh in favor of preliminary

---

[6] The Settlement also compares favorably to the median recovery of 7.6% to 9.2% of damages in securities class actions such as this between 2010 and 2019 for cases with comparable damages. *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENT, 2019 REVIEW AND ANALYSIS, at 6, located at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (last viewed Dec. 28, 2020).

12

approval." R&R at 19. These factors also support final approval. Litigation of this case would require addressing highly technical concepts such as market efficiency and price impact, in addition to complex legal issues like loss causation and scienter. Some of these issues were raised in the class certification pleadings and would be further investigated at the hearing for class certification, at summary judgment, and again at trial, requiring both sides to continue to pay for expenses such as costly expert testimony. *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, at *10 (S.D. Fla. 2016) (granting final approval and noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class.").

This factor thus supports final approval.

### 4. The Reaction of the Class

The "reaction of the class is an important factor" to consider. *Lipuma*, 406 F. Sup. 2d at 1324. As of the date of this filing, there have been no objections or requests for exclusion from the Class. *See* Abadou Decl. at ¶ 79; Martino Decl. at ¶¶ 19, 21. As the deadline for Class Members to request exclusion or object to the Settlement is February 2, 2021, Lead Plaintiff will address any possible objections by February 16, 2021, when his reply papers are due.

### 5. The Stage of the Proceedings and Discovery Conducted

As noted above, the Settling Parties conducted extensive investigation and discovery on Defendants and third parties, including taking depositions of Plaintiff and Defendants' financial consultant. *See* R&R at 19 ("[T]his case has been pending

13

for over three years, and the parties have conducted extensive discovery commensurate with the stage and proceedings including the filing of a motion to dismiss, and a motion to certify the class."). The stage of this litigation weighs in favor of approving the settlement. *Id.* ("The Settlement . . . obviates further class certification proceedings, summary judgment motions, and trial); *Dukes v. Air Can.*, 2019 U.S. Dist. LEXIS 221914, at *6 (M.D. Fla. 2019) (adopted Sep. 26, 2019, 18-cv-2176, ECF 40, (Kovachevich, J.)) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.").

Given the foregoing, the Parties were able to "adequately assess the strengths and weaknesses of their case and the benefits of entering into the Settlement." R&R at 19.

### III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Upon approval of the Settlement and entry of an Order approving distribution, the Net Settlement Fund shall be distributed to Authorized Claimants. The proposed Plan contained in the Notice details the manner in which the Net Settlement Fund shall be allocated. *See* Martino Decl., Ex. A. The Court has broad discretion in approving the Plan. *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 341 (E.D.N.Y. 2010). The standard for approval of the Plan is the same as the standard for approving the Settlement as a whole – it must be fair, reasonable and adequate. *In re Catalina Mktg. Corp. Sec. Litig.*, 2007 U.S. Dist.

14

LEXIS 105351, at *3 (M.D. Fla. 2007). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

Here, the Plan was prepared after careful consideration and analysis, and with the assistance of a damage expert, Dr. Zachary Nye. *See* Abadou Decl. at ¶¶ 96-99. The Plan was fully disclosed in the Notice that was mailed to 8,249 potential Class Members and nominees, and to date, there have been zero objections to the Plan. *Id.* at ¶ 79; *see also* Martino Decl. at ¶¶ 10, 21. The Plan provides for distribution of the Net Settlement Fund to Class Members who have a loss on their transactions in HIIQ securities purchased or otherwise acquired during the Class Period. Abadou Decl. at ¶¶ 98-99.

The formula to apportion the Net Settlement Fund among Class Members is based on when they purchased, acquired and/or sold their HIIQ securities and accounts for the PSLRA's 90-day look back period. *Id.* at ¶ 98; *see In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 348 (S.D.N.Y. 2005) ("[S]ettlement proceeds may be allocated with respect to the strengths and weaknesses of various claims."). The Plan is not a formalized damage study but, rather, a simplified methodology designed to compare one Class Member to another through their respective Class Period transactions in HIIQ common stock.

Under the Plan, the Court-appointed Claims Administrator, Epiq, will calculate each Authorized Claimant's "Recognized Claim," based on the information supplied in the Class Member's Proof of Claim. *See* Abadou Decl. at ¶¶

15

97-99. The Net Settlement Fund will be allocated on a *pro rata* basis to Authorized Claimants based on each Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

Accordingly, Lead Plaintiff believes that this method of allocation is reasonable, fair and equitable and therefore, warrants the Court's approval.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully requests this Court to grant final approval of the Settlement and Plan of Allocation and certify the Class as preliminarily certified in the Court's Preliminary Approval Order

### LOCAL RULE 3.01 CERTIFICATION

Undersigned counsel for Mr. Rector contacted counsel for Defendants regarding his motion. Defendants do not oppose the motion.

Dated: January 19, 2021            Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By: */s/ Ramzi Abadou*
Ramzi Abadou
(admitted *pro hac vice*)
(California Bar #222567)
ramzi.abadou@ksfcounsel.com
912 Cole Street, # 251
San Francisco, CA 94117
Telephone: 504-455-1400

16

Facsimile: 504-455-1498

**KAHN SWICK & FOTI, LLC**
Alexander L. Burns
(admitted *pro hac vice*)
(Louisiana Bar #31076)
alexander.burns@ksfcounsel.com
Alayne K. Gobeille
(admitted *pro hac vice*)
(Louisiana Bar #33856)
alayne.gobeille@ksfcounsel.com
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504-455-1400
Facsimile: 504-455-1400

*Counsel for Lead Plaintiff Robert Rector and Lead Counsel for the Class*

**GEORGE GESTEN MCDONALD, PLLC**
David J. George
Florida Bar No.: 898570
dgeorge@4-Justice.com
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33467
Telephone: (561) 232-6000

*Liaison Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Tuesday, January 19, 2021 on all counsel of record by using the CM/ECF system.

*/s/ Ramzi Abadou*
RAMZI ABADOU