UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE HEALTH INSURANCE
INNOVATIONS SECURITIES          Case No. 8:17-cv-2186-TPB-SPF
LITIGATION

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Lead Plaintiff Robert Rector's Unopposed Motion for (1) Final Approval of Settlement and (2) Plan of Allocation (Doc. 166) and Lead Counsel's Unopposed (1) Motion for Award of Attorneys' Fees and Reimbursement of Expenses and (2) Lead Plaintiff's Request for Reimbursement of Reasonable Costs and Expenses (Doc. 167). On February 23, 2021, the Court held a fairness hearing. In response to inquiries made by the Court at the fairness hearing, Lead Plaintiff filed his Supplemental Submission in Further Support and in Response to Requests Made by the Court (Doc. 182). For the reasons stated at the hearing and explained herein, the Court recommends that both motions be granted.

## I.  BACKGROUND

In this securities class action lawsuit,[1] Lead Plaintiff alleges, among other things, that Defendants Health Insurance Innovations, Inc. ("HIIQ" or the "Company") and its Chief Financial Officer Michael D. Hershberger (collectively, the "Defendants") violated federal securities laws by failing to disclose facts regarding the Company's unsuccessful application for its third-party administrator license with the Florida Office of Insurance Regulation and

---

[1] The operative complaint in this action is the Amended Complaint (Doc. 43) (the "Complaint").

the risks these facts posed to the Company's business, prospects, and operations. Lead Plaintiff further alleges that these material misstatements or omissions in HIIQ's public filings, press releases, or other public statements resulted in the prices of HIIQ securities to be artificially inflated, and investors suffered damages thereby.[2]  After the Court's ruling on Defendants' motion to dismiss (Doc. 76), two claims remain: (1) one claim against Hershberger and HIIQ for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission Rule 10b-5 promulgated thereunder; and (2) one claim against Hershberger for violation of Section 20(a) of the Exchange Act.

On May 11, 2020, the parties filed a Joint Notice of Settlement (Doc. 147), and, on June 22, 2020, Lead Plaintiff filed an unopposed motion for preliminary approval of the settlement, approval of notice to the class, and setting deadlines for final approval (Doc. 150). Attached to the motion for preliminary approval of settlement was the parties' Stipulation of Settlement (Doc. 150-1 at 2-39) (the "Settlement")[3] to settle and dismiss this litigation on a class-action basis, subject to the Court's approval.

The Settlement defines the Settlement Class as:

[A]ll Persons or entities who purchased or otherwise acquired HIIQ Class A Common Stock (trading symbol "HIIQ") or exchange-traded Call Options on HIIQ Class A Common Stock and all persons who sold (wrote) exchange-traded Put Options on HIIQ Class A Common Stock between August 4, 2017,

---

[2] The facts as alleged in the Complaint are discussed in greater detail in the Court's Order on Defendants' Motion to Dismiss the Consolidated Complaint.  (*See* Doc. 76 at 1-11).

[3] The definitions in Section IV.1 of the Settlement are hereby incorporated as though fully set forth in this Order, and capitalized terms shall have the meanings attributed to them in the Settlement. (*See* Doc. 150-1 at 6-13, ¶¶ 1.1-1.27). Citations throughout this Report and Recommendation are to the pagination assigned when a document was electronically filed, not to the internal pagination of a document.

and September 11, 2017, inclusive.  Excluded from the Settlement Class are Defendants, all current and former directors and officers of Health Insurance Innovations, Inc., each of their respective family members, and any affiliates controlled or owned by any of these excluded individuals and/or entities. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the procedure described in this Notice.

(Doc. 168-2 at 21, ¶ 1).  The Settlement, which resolves all claims in this action as to all remaining Defendants, provides a cash payment of two-million eight-hundred-thousand dollars ($2,800,000.00) to the Settlement Class pursuant to the terms set forth in the Settlement.

The Notice (Doc. 168-2 at 21-40) to Settlement Class Members explains the Settlement terms, including that the Net Settlement Fund[4] will be distributed pursuant to the proposed Plan of Allocation, which is also included in the Notice and subject to Court approval, to eligible Settlement Class Members who submit a valid and timely Proof of Claim (Doc. 168-2 at 10-20).  The formula to apportion the Net Settlement Fund to Settlement Class Members is based on when they purchased, acquired, and/or sold their shares of common stock and/or options, as developed by Plaintiff's expert economist and damages consultant, Zachary Nye, Ph.D.   Settlement Class Members' recoveries are based upon their relative losses and Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund, calculated in the same manner.  The Notice also explains that Lead Counsel for the Settlement

---

[4] The Net Settlement Fund is defined as "the Settlement Fund less (a) all federal, state and local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court" (Doc. 168-2 at 29, ¶ 34).

3

Class would seek fees not to exceed 33.3% of the Settlement Fund, plus reimbursement of out-of-pocket expenses not to exceed $315,000.00. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). The Notice further details: (1) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (2) the date, time, and location of the Final Approval Hearing.

On October 21, 2020, the undersigned recommended granting the unopposed motion for preliminary approval of the Settlement, approval of notice to the class, and setting deadlines for final approval (Doc. 161), which the Court did on November 19, 2020 (Doc. 164). On January 19, 2021, the parties filed the instant motions, seeking final approval of the Settlement and approval of Lead Counsel and Lead Plaintiff's fees, expenses, and costs (Docs. 166, 167). The Court conducted a fairness hearing on February 23, 2021. No objections to the Settlement were filed prior to, subsequent to, or raised at the fairness hearing. In considering the motion for final approval of the Settlement and Plan of Allocation, the Court first revisits certification of the class for purposes of settlement and whether the Plan of Allocation is a fair and reasonable method for distributing the Net Settlement Fund to the Class.

## II.   CLASS CERTIFICATION REQUIREMENTS

Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b). Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–

4

(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Although not explicitly stated in Rule 23, the Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable.  *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court must next determine if the proposal is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To make this determination, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In the Eleventh Circuit, the following analogous factors are also considered in determining whether to approve a settlement:

> there was no fraud or collusion in arriving at the settlement and ... the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *4-5 (M.D. Fla. Jan. 30, 2019) (reviewing Rule 23(e)(2) and *Bennett* considerations).

Although the proposed Settlement is being presented to the Court prior to a decision on class certification, the Court must still determine whether the proposed Settlement Class satisfies the requirements for class certification under Rule 23, albeit only for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.,* all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). Moreover, the Court must be satisfied that the class representative has standing to sue and the proposed class "is 'adequately defined and clearly ascertainable.'" *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *Prado-Steiman ex rel Prado*, 221 F.3d at 1279. Consistent with the Court's preliminary class certification, the Court recommends final certification of the Settlement Class.

### 1. Rule 23(a) Requirements

### a. Numerosity

Pursuant to Rule 23(a)(1), a plaintiff must show that the settlement class is so numerous that joinder is impracticable. *See* Fed. R. Civ. P. 23(a)(1). This requirement,

however, is "a generally low hurdle" and "less than twenty-one is inadequate ... [and] more than forty is adequate..." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

"Securities fraud actions predicated on public misrepresentations typically satisfy Rule 23(a)(1) where the securities were traded on a national public exchange, as the putative class members are likely to be numerous, geographically dispersed and difficult to identify." *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014) (citation omitted). Here, HIIQ's stock traded on the NASDAQ exchange at a weekly trading volume of over 2.9 million shares during the class period. Doc. 105-3 at ¶ 24. Plaintiff has alleged that the class consists of "hundreds if not thousands of persons." Doc. 43 at ¶ 143. As such, the class meets the numerosity requirement for settlement purposes.

### b. Commonality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has found that, for the purposes of Rule 23(a)(2), a single common question of law or fact is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met." *In re NetBank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) (citation omitted).

Lead Plaintiff alleges Defendants made misleading statements to investors in their August 2017 10-Q and these alleged material misrepresentations and omissions injured each Settlement Class Member who, by definition, acquired HIIQ securities during the Class Period. Doc. 43 at ¶¶ 51-57. Lead Plaintiff asserts that common questions of law or fact include whether: (1) Defendants violated the Exchange Act; (2) Defendants omitted and/or

misrepresented material facts; (3) Defendants knew or recklessly disregarded that their statements were false and misleading; (4) the price of HIIQ securities was artificially inflated during the Class Period; and (5) the appropriate measure of damages sustained by Settlement Class Members. *Id.*; *see also* Doc. 105-4 at 3-7. Here, the commonality requirement is clearly met for purposes of settlement.

### c. Typicality

Rule 23(a)(3) requires that a plaintiff's claims be typical of the claims of the settlement class. Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

In this case, Lead Plaintiff's claims involve the same HIIQ publicly traded securities, facts, and legal theories as those of the Settlement Class Members. *See Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880-UU, 2016 WL 4006661, at *8 (S.D. Fla. Mar. 16, 2016) (typicality requirement satisfied in securities case where "[t]he alleged fraudulent statements comprise the wrongful acts which will serve as the *same* factual predicate for Plaintiffs and all members of the class and which will determine whether Defendants are liable under the *same* securities fraud theories"). The alleged fraudulent statements here comprise the wrongful acts

that will serve as the same factual predicate for the Lead Plaintiff and the Settlement Class Members as to the same securities fraud claims. Accordingly, these allegations establish a sufficient nexus, and the typicality requirement is met by the Settlement Class.

### d. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). Lead Plaintiff is an adequate representative of the Settlement Class. He has standing (as discussed below), is a member of the Settlement Class he seeks to represent, and the Court is not aware of any antagonistic interests that exist between him and the Settlement Class Members. Likewise, the Court is also satisfied that Lead Counsel, Kahn Swick & Foti, LLC ("KSF") is highly experienced in prosecuting securities class actions. *See* Doc. 105-2; *see also Dukes v. Air Canada*, No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *4 (M.D. Fla. Sept. 6, 2019) (finding adequacy of representation requirement where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience").

## 2.  Rule 23(b) Requirements

At least one of the three conditions imposed by Rule 23(b) must also be satisfied, and, here, the requirements of Rule 23(b)(3) are satisfied for purposes of certification of the Settlement Class.  Rule 23(b)(3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### a.  Predominance

Examination of predominance looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods.*, 521 U.S. at 623.  Here, the core common issues of law and fact that surround the securities fraud claims of the Settlement Class predominate for purposes of settlement over any individual questions associated with the resolution of those claims.  *See, e.g., id.* at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud…."); *Monroe Cnty. Employees' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 380 (N.D. Ga. 2019) (same); *Kirkpatrick*, 827 F.2d at 725 (securities fraud complaint that "allege[d] a single conspiracy and fraudulent scheme against a large number of individuals" was "particularly appropriate for class action").

First, for the § 10(b) and Rule 10b-5 claims, Lead Plaintiff must prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) a causal connection between the material

misrepresentation or omission and the loss, otherwise known as "loss causation." *Aranaz*, 302 F.R.D. at 667 (citing *Dura Pharm., Inc. v. Broudo*, 554 U.S. 336, 341 (2005)). These types of securities fraud claims include several common issues such as: whether defendants made a misleading statement, whether that statement was material, whether defendants made that statement with scienter, and whether defendants made that statement in connection with the purchase or sale of securities. *See id.* Though the elements of "economic loss" and "loss causation" may require individualized proof, here, as is typical with private securities fraud claims predicated on public statements, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance" and whether the issue of reliance will require individualized proof. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). The traditional means of proving reliance would require individualized evidence; however, where a presumption of reliance applies, plaintiffs need not show individualized reliance. *See Aranaz*, 302 F.R.D. at 667-68 (citation omitted). "[P]laintiffs who purchase securities on a well-developed and efficient market, in which price generally reflects all public information, following a public and material misrepresentation are presumed to have relied on that misrepresentation." *Id.* (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988)); *see also Haliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277-78 (2014). Therefore, to prove entitlement to a presumption of reliance at the class certification stage, for purposes of showing the predominance of common issues, a plaintiff need only show that: (1) the alleged material misrepresentation was publicly known before the plaintiff traded the security; and (2) the security traded in an efficient market. *Aranaz*, 302 F.R.D. at 668. These elements have been satisfied here. (*See* Doc. 104 and Doc. 105-3). Accordingly,

Lead Plaintiff and the Settlement Class have established a presumption of reliance, and common questions of liability predominate these claims.

The § 20(a) claim at issue in this case requires proof that Defendant Hershberger: (1) had the power to control the general affairs of HIIQ, the entity primarily liable for securities fraud at the time of the violation; and (2) had the power to control or influence the specific corporate policy that resulted in primary liability. *See Aranaz*, 302 F.R.D. at 667 (citing *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)). The questions presented here regarding the extent and nature of Hershberger's control over HIIQ are subject to generalized proof and common issues predominate. (*See* Doc. 43 at ¶ 164).

Although the remaining issue of damages would be individualized as to each Settlement Class Member, it would only require a clerical computation of the damages alleged and would not predominate. As such, the Court finds that the questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members.

### b. Superiority

Satisfaction of the superiority requirement of Rule 23(b)(3) requires a movant to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It is well recognized that a class action is not only a superior method but sometimes the only feasible method to fairly and efficiently adjudicate a controversy, such as this one, involving a large number of purchasers of securities allegedly injured by securities law violations. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983)

12

("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Pertinent to the consideration of superiority are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Here, the thousands of potential claims, the desirability of consistent adjudication of those claims, the high probability that individual members of the proposed class would not have a great interest in controlling the prosecution of the claims, and the economical hurdles that would make litigating the issues individually less feasible – all these factors weigh in favor of a class action as the preferable method for adjudicating these claims. *See Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015). Accordingly, for purposes of class settlement, the Court finds that it is clear that the use of the class device is superior to other methods of resolving the issues in this action.

### 3. Standing

"For a district court to certify a class action, the named plaintiffs must have standing…." *Vega*, 564 F.3d at 1265 (citation omitted). In order to establish standing, a plaintiff must show that: (1) he suffered an injury in fact; (2) that injury is fairly traceable to the defendant's alleged conduct; and 3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In addition, a plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members" in order to have standing to represent that class. *Prado-Steiman ex rel Prado*, 221 F.3d at 1279 (citation omitted); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th

Cir. 2008).  The Court finds that Lead Plaintiff has standing to bring this case based on the losses he suffered associated with his purchases of the Company's common stock during the Class Period.  (*See* Doc. 20-1).

## 4.  Adequately Defined and Clearly Ascertainable

"An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 680 (M.D. Fla. 2015) (citing *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)); *see also Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).[5]  In addition, analysis of this objective criteria should be administratively feasible, *i.e.*, "identifying class members is a manageable process that does not require much, if any individual inquiry."  *Riffle*, 311 F.R.D. at 680 (quoting *Bussey*, 562 F. App'x at 787).

Here, the Settlement defines the Settlement Class as all who purchased or otherwise acquired HIIQ Class A common stock or exchange-traded call options on HIIQ Class A common stock, and all persons who sold (wrote) exchange-traded put options on HIIQ Class A common stock, between August 4, 2017 and September 11, 2017, inclusive.  (Doc. 168-2 at 21, ¶ 1).  Defendants were obligated "to cooperate in the production of information with respect to the identification of Settlement Class Members from HIIQ's shareholder transfer records" (Doc. 150-1 at 23, ¶ 6.4).  As such, Settlement Class Members were ascertained by reference to objective criteria, which could be discerned in an administratively-feasible fashion.  The Settlement Class is, therefore, adequately defined and clearly ascertainable.

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority.  11th Cir. R. 36-2.

Accordingly, the Court recommends final certification of the Settlement Class for purposes of settlement.

### III.    FAIRNESS OF THE AGREEMENT

As set forth above, the Court must also determine whether the Settlement is fair, adequate, and reasonable.  The Court first looks at whether each prong of Rule 23(e)(2) is satisfied. Here, the first prong, Rule 23(e)(2)(A), is satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class.  More specifically, the Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses, including: (1) an exhaustive factual investigation by Lead Counsel prior to filing the Complaint, including public records requests to insurance commissioners' offices around the country; (2) opposing Defendants' motion to dismiss; (3) intensive negotiations, including three separate, full-day mediation sessions; and (4) propounding discovery requests and reviewing responses from Defendants and numerous non-parties, including analysts that covered HIIQ stock, regulatory agencies, and HIIQ's regulatory counsel.  Rule 23(e)(2)(B) is also satisfied because the Settlement was negotiated at arm's length by informed counsel acting in the best interests of their respective clients during the third mediation, which lasted eleven hours.  Rule 23(e)(2)(C) is satisfied because the relief provided for the Class is adequate, taking into account: (1) the costs, risk, and delay of trial and appeal; (2) the effectiveness of the proposed method of distributing relief to the class, including the method proposed for processing claims; (3) the terms of any proposed award of attorney's fees including the timing of such payment; and (4) the parties' Confidential Supplemental Agreement to Stipulation of Settlement (Doc. 159-1) concerning a so-called "blow up" provision, which the undersigned

reviewed in its unredacted form (Doc. S-160).[6] Finally, Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation.

Turning to the *Bennett* factors, there is no indication of any fraud or collusion amongst the parties in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. In fact, one indication of a lack of fraud or collusion is the lack of a reversion of settlement funds back to Defendants. (Doc. 150-1 at 24, ¶ 6.6; Doc. 168-2 at 35, ¶ 71); *see De Leon v. Bank of Am., N.A.*, No. 6:09-cv-1251-Orl-28KRS, 2012 WL 2568142, at *14-15 (M.D. Fla. Apr. 20, 2012) (discussing reversion of all remaining funds to defendants as factor in "the possibility that there was some collusion" in the settlement agreement).

Regarding the likelihood of success at trial, the parties heavily dispute whether Defendants would be liable for the claims alleged in the Complaint. Defendants contend that Lead Plaintiff would not be able to demonstrate: (1) loss causation under the standard established in *Meyer v. Greene*, 710 F.3d 1189, 1193 (11th Cir. 2013); (2) scienter; and/or (3) the materiality or falsity of the allegedly misleading statement that remains at issue following the Court's ruling on the motion to dismiss. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("Proving scienter at trial would have required showing not just negligence but severe recklessness, posing

---

[6] "[O]ccasionally parties write a so-called 'blow up' agreement into a settlement, whereby the defendants are authorized to walk away from the settlement if too many class members opt out; parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs." 7 Newberg on Class Actions § 22:59 (5th ed.) (citing *In re HealthSouth Corp. Securities Litigation*, 334 F. App'x 248, 253–55 (11th Cir. 2009) (holding that "portions of the Plan [of Allocation] were necessarily confidential to avoid revealing details about the blow provision [sic]")).

additional substantial risk and uncertainty."). Indeed, despite Lead Plaintiff's confidence regarding the ultimate outcome, there is an inherent risk in any litigation but particularly so in securities class action litigation. *See In re Netbank, Inc. Secs. Litig.*, No. 1:07-cv-2298-TCB, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011) ("As has been noted by other courts, the complexity of securities class action litigation is 'notably difficult and notoriously uncertain.'"). Considering these factors, it is not certain that Lead Plaintiff would prevail at trial.

As for the second and third factors – the range of possible recovery and the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable – Lead Plaintiff represents that his expert economist, Dr. Nye, has calculated the maximum damages attributable to the alleged fraud to be $28.5 million, which puts the Settlement Fund of $2.8 million at approximately 10% of the expert's estimated value.[7] (*See* Doc. 150 at 10). The Court notes that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Defendants, on the other hand, deny that the Class has suffered any damages and have argued that damages associated with the

---

[7] The Settlement states that the Settlement Fund will be distributed to Authorized Claimants after payment of expenses, taxes, and costs and pursuant to a Plan of Allocation (Doc. 150-1 at 9, ¶ 1.17; *see also* Doc. 150-1 at 69-77). Ultimately, the estimated average amount of recovery per share for the HIIQ Class A Common Stock will be approximately $0.10 per share, before deduction of attorneys' fees, costs, and expenses awarded by the Court and the costs of providing notice and administering the Settlement, if all potential valid claims for all such Class A Common Stock are submitted (Doc. 150-1 at 57-58, ¶ 3).

alleged fraud cannot be disaggregated from other company-specific information (Doc. 113 at 18-20).  Lead Plaintiff concedes that recoverable damages could be significantly less than the Settlement Amount if the Court were to credit Defendants' arguments or if the Class did not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement Amount.  *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("the range of possible recovery must be weighed against the risk of no recovery").  Because the range of possible recovery is zero should Defendants prevail to $28.5 million if weight is given to Lead Plaintiff's expert, the Settlement Amount is within such a range.  Thus, the undersigned finds such relief to be within the range of reasonableness.  *See Bennett*, 737 F.2d at 987 ("a just result is often no more than an arbitrary point between competing notions of reasonableness").

The fourth and sixth factors – the complexity, expense, and duration of litigation and the stage of proceedings at which the settlement was achieved – both weigh in favor of final approval.  "Securities litigation generally involves complex issues of fact and law…."  *Coca-Cola Co.*, 2008 WL 11336122, at *8.  Lead Plaintiff asserts that litigation of this case would require addressing highly technical concepts such as market efficiency and price impact as well as complex legal issues such as loss causation and scienter.  Moreover, this case has been pending for over three years, and the parties have conducted extensive discovery commensurate with the stage of the proceedings including the filing of a motion to dismiss (Doc. 53) and a motion to certify the class (Doc. 104).  Accordingly, the parties can adequately assess the strengths and weaknesses of their case and the benefits of entering into the Settlement.  *See Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.,* No. 8:03-CV-2246-T-

18

23TGW, 2006 WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). The Settlement, however, obviates further class certification proceedings, summary judgment motions, and trial. *See Thorpe*, 2016 WL 10518902, at *3 (noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class").

Finally, the fifth factor regarding the amount of opposition to the Settlement weighs heavily in favor of the Settlement being fair and reasonable as there have been no objections or requests for exclusion from the Class filed. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (the "reaction of the class is an important factor" in determining whether a proposed settlement is fair, reasonable, and adequate). Here, as of February 26, 2021, there have been 11,725 Notices mailed, 23 Notices returned as undeliverable, 97 proofs of claim filed, and zero objections and zero requests for exclusion filed. (Docs. 175, 182). This reaction of the class militates in favor of approval. *Lipuma*, 406 F. Supp. 2d at 1324. Therefore, considering the foregoing, coupled with the strong judicial policy favoring settlement, the undersigned finds the Settlement to be a fair, adequate, and reasonable resolution of the class members' claims and recommends approving the Settlement.

## IV.    ADEQUACY OF NOTICE

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). For classes certified pursuant to Rule 23(b)(3), as in the instant case, "the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Moreover, the notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (quotations, citation, and original alterations omitted).

Here, the Notice, as described above, was approved by Court after finding that the method of providing notice was reasonable. (Doc. 164 at 6-7). Thereafter, Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), made an initial mailing of 8,249 Notices to potential Settlement Class Members and nominees by first class mail. (*See* Doc. 150-1 at 56-83; Doc. 168 at ¶ 79; Doc. 168-2 at 4, ¶ 10). An additional 3,476 Notices were subsequently sent to potential Settlement Class Members and nominees due to requests received from several financial institutions and nominees.[8] (Doc. 182-1 at ¶ 3). As of February

---

[8] As described in the Notice, financial institutions and nominees have ten days from receipt of the Notice to either: (1) request additional Notices from Epiq to mail to all such beneficial owners; or (2) submit a list of such beneficial owners to Epiq. If they choose the former option, then they have an additional ten days from receipt of the additional copies of the

26, 2021, 23 Notices had been returned to Epiq as undeliverable by the U.S. Postal Service. (Doc. 182-1 at ¶ 4). Epiq represents that Notices deemed undeliverable will be researched in national databases to determine whether there has been a subsequent change of address, and those with updated information will be re-mailed. (Doc. 182-1 at ¶ 4). In addition, the Summary Notice was published once in *Investor's Business Weekly* and once online over the *PR Newswire*. (*See* Doc. 150-1 at 85-87; Doc. 168-2 at 3-4, ¶ 11). The Notice and Proof of Claim forms were also posted on a website hosted by Epiq and dedicated to the settlement administration of this litigation. (*See* Doc. 168-2 at 6, ¶ 18). Upon consideration, the Court finds that the Notice to the Class was reasonable and the best practice practicable under the circumstances, consistent with Rule 23(e) and Rule 23(c)(2)(B).

Upon consideration of the class certification requirements discussed above, the undersigned recommends granting final approval of the Settlement and Plan of Allocation and certifying the proposed Class for settlement purposes as requested in Lead Plaintiff's motion (Doc. 166).

## V.   ATTORNEYS' FEES

Lead Counsel and George Gesten McDonald, PLLC ("GGM" or "Liaison Counsel") (collectively, "Counsel"), in their Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses (Doc. 167), request attorneys' fees in the amount of $924,000, which is equal to 33% of the Settlement Fund. Here, in a class action common fund case, the

---

Notice to mail to all such beneficial owners. If they choose the latter option, then Epiq mails the additional Notices to all such beneficial owners. (Doc. 168-2 at 39, ¶¶ 93-95).The dates that the financial institutions and nominees receive the initial Notice begin the timeframe in which they are required to take action and are inherently subject to fluctuation.

burden of demonstrating that its fee is reasonable is on the party seeking attorneys' fees. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Courts routinely use one of two methods to determine reasonableness: (1) the percentage method or (2) the lodestar method. *See In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1076 (11th Cir. 2019). The Eleventh Circuit, however, has made clear that the percentage of recovery method is the most appropriate for evaluating common fund fee requests. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Home Depot Inc.*, 931 F.3d at 1081 ("In common-fund cases, we have directed courts to use the percentage method.").

### 1. Percentage-of Recovery Analysis

The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This "benchmark" percentage "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. The individual circumstances to be considered in adjusting the percentage of recovery include the twelve factors set out in *Camden I*, namely:

(1)    the time and labor required;
(2)    the novelty and difficulty of the questions involved;
(3)    the skill requisite to perform the legal service properly;
(4)    the preclusion of other employment by the attorney due to acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the client or the circumstances;
(8)    the amount involved and the results obtained;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the client; and

(12)   awards in similar cases.

*Id.* at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 714-19 (5th Cir. 1974)).  "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, … and the economics involved in prosecuting a class action." *Id.* at 775.  There will also be, in most instances, additional factors unique to a particular case that will be relevant to the district court's determination.  *Id.*  The Court notes in considering these factors[9] that "[a]wards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases…." *Ressler*, 149 F.R.D. at 655.

### a.  Time and Labor Required

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, … they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717 (citation omitted).  Counsel collectively spent over 4,400 hours researching, investigating, and prosecuting this case.  Lead Counsel provided a detailed declaration attesting to the time and labor spent on the action.  As set forth in the Abadou Declaration (Doc. 168), Lead Counsel: (a) opposed Defendants' motion to transfer related cases to a different court in this district; (b) researched and briefed Lead Plaintiff's motions to consolidate the related actions; (c) conducted a thorough investigation of the underlying facts and potential claims against Defendants, including in depth review of HIIQ's SEC filings and public records requests to

---

[9] Plaintiff asserts, and this Court agrees, that the time limitations imposed by the client or the circumstances factor does not apply in this action.  As such, it will not be addressed by the Court.  *See Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992) (finding this factor "not directly applicable").  Lead Plaintiff imposed no time limitations on Lead Counsel.  (*See* Doc. 167 at 10 n.4).

offices of insurance commissioners across the country; (d) defeated Defendants' motion to dismiss, in part; (e) prepared for and engaged in two court-ordered mediations with the Honorable Magistrate Judge Christopher Tuite; (f) consulted with experts on the issues of damages and market efficiency; (g) prepared and served formal requests for production of documents and interrogatories upon Defendants, after which over 10,000 pages of documents were received and reviewed; (h) prepared and issued a myriad third party subpoenas; (i) defended Lead Plaintiff's class deposition; (j) prepared for and deposed Defendants' financial economist expert, Paul Zurek, Ph.D.; (k) noticed and prepared for HIIQ's 30(b)(6) deposition; (l) submitted a detailed mediation brief to Mr. David Geronemus, Esq. (JAMS) and engaged in an eleven hour mediation; and (m) prepared settlement and notice papers on behalf of Lead Plaintiff and the Settlement Class. *See generally,* Doc. 168. Thus, the Court finds that the time and labor devoted to this case weighs in favor of the requested fee award.

### b. Novelty and Difficulty of the Questions Involved, the Skill Required, and the Experience, Reputation and Ability of the Attorneys

These three factors weigh in favor of granting the requested fees. First, § 10(b) litigation typically involves, as here, multi-faceted, complex legal questions, including proving falsity, scienter, materiality, causation, and damages. *See Ressler*, 149 F.R.D. at 654; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same); *Coca-Cola Co.*, 2008 WL 11336122, at *8 ("Securities litigation generally involves complex issues of fact and law…."). Next, "[t]he trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this [skill of counsel] consideration." *Johnson*, 488 F.2d at 718; *see also Norman v. Housing Auth. of City of*

*Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level"). Lead Counsel practices extensively in complex federal civil litigation, particularly securities class actions, and has successfully litigated these types of actions in courts throughout the country. In addition, after Foley & Lardner, LLP withdrew from the litigation, Defendants were represented by Gibson, Dunn & Crutcher LLP, an international law firm with extensive experience in the defense of securities class actions. *See Ressler*, 149 F.R.D. at 654 ("Moreover, in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel.").

### c. The Customary and Contingent Nature of the Fee and Preclusion of Other Employment

The requested fee here is customary for a case such as this, *i.e.*, a complex class action pursued on a contingency basis. *See id.* ("The 'customary fee' in a class action is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."); *Behrens*, 118 F.R.D. at 548 ("Most often, this method of representation is the only means a defrauded securities investor can seek assistance from an attorney."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *4 (N.D. Ga. June 6, 2019) ("Awards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis.").

The hours required to prosecute this action limited the amount of time and resources that Counsel was able to devote to other matters over the period of this litigation. *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011) ("It is

25

uncontroverted that the time spent on the Action was time that could not be spent on other matters.  This factor too supports the requested fee.").  Counsel have collectively spent over 4,400 hours researching, investigating, and prosecuting this case on behalf of the Class and have incurred $245,631.85 in out-of-pocket expenses with no compensation for their services since this action was initiated in 2017 and with no guarantee that any of those funds would be reimbursed.  Accordingly, the Court concludes that these factors weigh in favor of the requested fee award.

### d.  The Amount Involved and the Results Achieved

The  amount involved and the results obtained is considered the "most important factor" in determining an award of attorneys' fees.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006); *see also Camden I*, 946 F.2d at 774 ("[A] common fund is itself the measure of success … and represents the benchmark on which a reasonable fee will be awarded …. In this context, monetary results achieved predominate over all other criteria.").

Here, the Settlement is estimated to provide a recovery of approximately 10% of the maximum aggregate damages estimated by Lead Plaintiff's damages consultant, assuming full recovery of the stock drop following the alleged corrective disclosure.  As discussed above, this recovery is well within the range of reasonable settlements.  Therefore, the Court concludes that the results obtained in this case are reasonable and weigh in favor of the requested fee award.

26

### e.  Fee Awards in Similar Cases

As noted in § V.1.h *infra*, the 33% requested fee award is reasonable and consistent with fee awards that have been granted in other securities litigation class actions within the Eleventh Circuit.  Moreover, the negative lodestar multiplier of 0.33 further supports the reasonableness of the fee requested.  *See* § V.2 *infra*.

### f.  The "Undesirability" of the Case

Here, the "undesirability" of the action supports the requested fee.  As discussed above, this class action required representation by experienced counsel willing to take the case on a contingency-fee basis despite the significant legal obstacles that the case presented.  The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable.  *See Checking Acct.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight."); *In re Sunbeam*, 176 F. Supp. 2d at 1336 ("possible financial outcome of a case" may make a case undesirable).

### g.  The Nature and Length of Relationship with the Client

Counsel has represented Lead Plaintiff for three years, and Lead Plaintiff was very involved with all aspects of the litigation, including providing deposition testimony. (*See* Doc. 168-9 at ¶¶ 4-7).  In addition, Lead Plaintiff supports Counsel's fee request. (*Id.* at ¶ 11).  This factor weighs in favor of the requested fee.

### h. Additional Factors

The lack of objections by the Class also supports the Counsel's fee request.  No Class Member has objected to the Settlement or the Notice that Lead Counsel may seek a fee award not to exceed 33 1/3% of the Net Settlement Fund and reimbursement of litigation expenses not to exceed $315,000.  (Doc. 177 at ¶ 5).  Likewise, no requests for exclusion have been made.  (*Id.* at ¶ 4).  The absence of objections supports Counsel's fee and expenses requests.  *See Ressler*, 149 F.R.D. at 656 ("The fact that there are no objections to either the Settlement or to Petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request.").  This positive reaction to the Settlement further supports the fairness of the fee request.

Moreover, in considering reasonableness under the percentage method, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."  *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33 1/3% to class counsel)).  This is true for comparable securities actions in district courts in the Eleventh Circuit as well.  *See, e.g.*, *Pritchard v. Apyx Med. Corp.*, No. 8:19-cv-919-SCB-AEP, 2020 WL 6937821, at * 1 (M.D. Fla. Nov. 18, 2020) (awarding 33 1/3% of settlement fund as "fair and reasonable"); *Netbank*, 2011 WL 13353222, at *2 (approving 34% award); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, No. 1:00-cv-1416-CC, 2005 WL 8172262, at *3 (N.D. Ga. May 26, 2005) (awarding

28

33 1/3% of settlement fund as "fair and reasonable"); *In re Clarus Corp. Sec. Litig.*, No. 1:00-cv-2841-CAP, 2005 WL 8172269, at *3 (N.D. Ga. Jan. 6, 2005) (awarding 33 1/3% of settlement fund as "fair and reasonable").

### 2.   Lodestar Cross-Check Analysis

In addition, the alternative lodestar method, employed as a cross check, confirms the attorneys' fee award sought is reasonable. *See, e.g., Waters,* 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) ("Some courts use the lodestar method as a cross-check of the percentage of the fund approach."). Here, under counsel's applicable billing rates at 4,462.8 total hours, the total lodestar is $2,783,062.50. (*See* Doc. 168 at ¶¶ 106-13). Accordingly, the requested attorneys' fee of $924,000 requested represents a negative multiplier of 0.33. (Doc. 168 at ¶ 106). Typically, courts award a multiplier range of 2.5 to 4 in class actions. *See, e.g., Pinto*, 513 F. Supp. 2d at 1344 ("not[ing] that lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5"); *see also Netbank*, 2011 WL 13353222, at *3 (fact that counsel recovered a fraction of their lodestar "further confirms that the awarded fee is wholly proper"). Here, the lodestar cross-check supports the reasonableness of the requested fee award. As such, the undersigned finds that an award of 33% of the Settlement Fund for attorneys' fees is reasonable under the particular circumstances of this case.

### VI.   ATTORNEYS' EXPENSES

Counsel also seek reimbursement of expenses incurred in prosecuting and resolving the action, totaling $245,631.85, plus interest. In Private Securities Litigation Reform Act of

1995 ("PSLRA") cases, it is well-established that "plaintiff's counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred...." *Behrens*, 118 F.R.D. at 549. The Class was informed in the Notice that Counsel would seek reimbursement of expenses not to exceed $315,000. (Doc. 168-2 at 22, ¶ 5). The actual expenses now being requested in the amount of $245,631.85 are well within the $315,000 expense cap amount conveyed to the Class.

The bulk of the expenses incurred were for professional services rendered by experts, consultants, and mediators. (Doc. 168 at ¶¶ 130-41). The remaining expenses include computerized legal research, copying costs, travel, delivery costs, filing fees, and other incidental expenses incurred in the ordinary course of litigation. (*Id.*); *see also Behrens*, 118 F.R.D. at 549 ("[T]hese expenses include the necessary costs associated with any action: travel, depositions, filing fees, postage, and telephone, and copying."); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860, at *12 (S.D. Fla. Nov. 20, 2017) (awarding expenses for mediation, expert witness, general filing, and travel); *Lipuma v. Am. Express Co.*, No. 04-20314-Civ-ALTONAGA, 2007 WL 9701671, at *7-8 (S.D. Fla. Sept. 14, 2007) (awarding expenses for travel, photocopying, and computerized research); *In re Profit Recovery Group*, 2005 WL 8172262, at *3 (awarding $735,628 as reimbursement of reasonable litigation expenses). Having reviewed the expenses, the undersigned finds that they were reasonably incurred and necessary to furthering the interests of the Class during the course of the litigation and recommends that they be approved.

## VII.   LEAD PLAINTIFF'S COSTS AND EXPENSES

Lead Counsel requests that Mr. Rector be awarded $3,125 to compensate him for the time he incurred in his role as Lead Plaintiff and proposed class representative pursuant to the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4) (lead plaintiffs may recover the "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class"). The Notice to potential Settlement Class Members advised that the request for reimbursement (not to exceed a cap of $315,000) could also include Lead Plaintiff's reasonable costs and expenses, directly related to his representation of the Settlement Class. (Doc. 168-2 at 22, ¶ 5). No objections from the potential Settlement Class were received.

Mr. Rector is only seeking reimbursement for his time as he only incurred a *de minimis* amount of out-of-pocket expenses. (Doc. 167 at 9; Doc. 168-9 at ¶ 9). Even when combined with the expenses sought by Lead Counsel, the total of $248,756.85 remains significantly less than the $315,000 maximum noticed to the Class. The Court finds that the requested costs and expenses of $3,125 are reasonable and consistent with other such awards approved in other securities litigation class actions in this district. *See, e.g., In re Rayonier Inc. Secs. Litig.*, No. 3:14-cv-1395-J-32JBT, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2007) (awarding lead plaintiffs $1,680 and $2,400 "for their reasonable costs and expenses directly related to their representation of the Settlement Class"); *City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.*, No. 3:10-cv-1073-TJC-JBT, 2014 WL 12621611, at *2 (M.D. Fla. Mar. 4, 2014) (awarding lead plaintiff in securities fraud case $3,629.54 "directly related to its

31

representation of the Settlement Class"). Therefore, the undersigned recommends Lead Plaintiff's costs and expenses be approved.

## VIII.   CONCLUSION

Accordingly, it is hereby **RECOMMENDED**:

1.      Lead Plaintiff's Unopposed Motion for (1) Final Approval of Settlement and (2) Plan of Allocation (Doc. 166) be **GRANTED**; and

2.      Lead Counsel's Unopposed (1) Motion for Award of Attorneys' Fees and Reimbursement of Expenses and (2) Lead Plaintiff's Request for Reimbursement of Reasonable Costs and Expenses (Doc. 167) be **GRANTED**.

**IT IS SO REPORTED** in Tampa, Florida, on March 23, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

cc:      Hon. Thomas P. Barber